UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.:19-60301-CR-AHS

UNITED STATES OF AMERICA,

vs.

RICARDO MARTINEZ,
        Defendant.
_____/

## DEFENDANT'S OBJECTION TO THE PRE-SENTENCE INVESTIGATION REPORT AND SUPPORTING MEMORANDUM OF LAW.

Defendant RICARDO MARTINEZ, pursuant to Rule 32 of the Federal Rules of Criminal Procedure, *United States v. Booker,* 125 S.Ct. 738 (2005), 18 U.S.C. §3553(a), and the additional authorities set forth in the incorporated memorandum of law, submits this objection to his pre-sentence investigation report ("PSR"). Mr. Martinez's sentencing hearing is currently set to take place on January 5, 2021.

    **1.**     **Paragraphs 82 (Role in the Offense).** Mr. Martinez objects to the probation officer's failure to recommend that he receive a two-level "minor role" reduction under Section 3B1.2(b), which authorizes such an adjustment for a defendant who "was a minor participant in any criminal activity."

A.

A "minor participant" is defined as someone who is "less culpable than most other participants, but whose role could not be described as minimal". In evaluating a defendant's role in the offense, the Court must consider the "totality of the circumstances", assessing: "first, the defendant's role in the relevant conduct for which [he] has been held accountable at

sentencing, and, second, [his] role as compared to that of other participants in [his] relevant conduct." *See United States v. Banguera Colorado,* 716 Fed.Appx. 922 (11th Cir. 2017) (vacating denial of minor role reduction).

The Commentary to Section 3B1.2(b) provides a non-exhaustive list of factors, discussed below, the Court should consider in determining whether a defendant qualifies for "minor role" treatment. *See* Application Note 3(C). These include the "degree to which the defendant participated in planning or organizing the criminal activity"; the "degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority"; the "nature and extent of the defendant's participation", including "the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts".

Moreover, in drug-trafficking cases such as this one, the guidelines specifically encourage consideration of the "minor role" reduction. Thus, Application Note 3(A) states: "a defendant who is convicted of a drug trafficking offense, whose participation in that offense was limited to transporting or storing drugs and who is accountable under §1B1.3 only for the quantity of drugs the defendant personally transported or stored *may receive an adjustment under this guideline*" (emphasis added).

B.

Mr. Martinez deserves a "minor role" reduction because of the limited role he played in this widespread conspiracy. Mr. Martinez participated in this offense from about August 2016 to the end of 2018, when he finally had enough of co-defendant Luis Del Pino, told him he no longer wanted to be associated with him, and received a beating for his disloyalty. *See*

Exhibit A. Until he left the conspiracy, Mr. Martinez was basically Mr. Del Pino's errand boy. As the PSR correctly observes, Mr. Del Pino "instructed Martinez to pick up boxes for him" (PSR ¶14); or "Del Pino also told Martinez to pick up all inventory and money owed by Espinosa" (PSR ¶47). Mr. Del Pino also "paid Martinez to mix anabolic steroids" for him. PSR ¶62. Mr. Martinez opened only three false UPS accounts in the names of other individuals and made about 36 pick-ups from those boxes. Mr. Martinez did not participate in the planning or organizing of this criminal conspiracy and he had no decision-making or supervisory authority of any kind. He took instructions from Mr. Del Pino and was largely rewarded with personal use amounts of marijuana and steroids for his efforts. He did odd jobs for Mr. Del Pino, not all of which were of an illicit nature.

While it true that other co-conspirators also took orders from Del Pino, their involvement was vastly more extensive and lucrative than Mr. Martinez's. Thus, the PSR shows that five of Mr. Martinez's co-defendants travelled extensively throughout the United States in furtherance of this conspiracy. PSR ¶30. During a one-year period of time alone, these men "combined for 108 domestic flights" costing over $75 thousand in air fare. *Id.* Mr. Martinez never travelled anywhere for Mr. Del Pino. He's always had a job to go to the next day.

Similarly, various co-defendants opened numerous bank accounts in furtherance of the conspiracy and poured very large amounts of illegal proceeds (over $2 million) into these accounts. PSR ¶32. These men participated in the proceeds of the offense to a much greater extent than Mr. Martinez, who received only nominal amounts of cash from Mr. Del Pino and worked mostly to support his dependency on steroids and marijuana.

Finally, as the PSR correctly reflects, most of Mr. Martinez's co-conspirators, many of whom remained in the conspiracy until they were arrested, were personally responsible for considerably greater amounts of controlled substances. Mr. Del Pino is being held accountable for over 1.6 thousand kilograms of converted drug weight. PSR ¶52. Mr. Sanchez is responsible for approximately the same amount. PSR ¶53. Mr. Roque Nunez is responsible for almost 1.4 thousand kilograms. Six others are being held responsible for amounts well above 500 kilograms. PSR ¶¶n 51-61. Mr. Martinez's relevant drug amount is about 250 kilograms, further reflecting his lesser role in the offense.

C.

For these reasons, Mr. Martinez should be deemed "less culpable than most other participants" involved in this offense and, therefore, entitled to the two-level "minor role" adjustment. *See generally, United States v. De Varon,* 175 F.3d 930 (11th Cir. 1999); *United States Campbell,* 139 F.3d 820 (11th Cir. 1998); *United States v. Veloza*, 83 F.3d 380 (11th Cir. 1996); *United States v. Munoz-Realpe,* 21 F.3d 375 (11th Cir. 1994).

4.  **Section 3553(a) Factors.**  A "minor role" reduction here would result in a total offense level of 19 and a corresponding guideline sentencing range of *30 to 37 months* in prison.  As this Court knows, after *Booker,* the guidelines are deemed merely *advisory* and the Court has considerable flexibility in determining the appropriate sentence. Pursuant to the plea agreement, the government has agreed that Mr. Martinez is free to seek a downward variance from his recommended guideline range.

After *Booker*, the Court should consider the Section 3553(a) factors, and impose a

4

sentence that is "sufficient, but not greater than necessary" to comply with the purposes of the statute. Chief among the Section 3553 factors that suggest a sentence *below* the applicable guidelines is appropriate here are "the nature and circumstances of the offense and the history and characteristics of the defendant."

A.

As shown in his PSR, Mr. Martinez has many good personal qualities and characteristics suggesting that he will be able to turn things around after this dark chapter in his life (Mr. Martinez will be filing letters of support with the Court before sentencing). These positive attributes constitute mitigating considerations not fully taken into account by his guidelines and therefore provide a basis for a slightly reduced sentence.

Mr. Alvarez was born in Miami and recently turned 32 years old. He has never previously been charged with a crime. He was raised by his single mother and maternal grandfather in a low-income environment. Mr. Alvarez's mother says he is "a good son" whose involvement here is uncharacteristic. PSR ¶95. Mr. Martinez was badly shaken up when his grandfather passed away in 2006, when Mr. Martinez was 17 years old.

Mr. Martinez struggled to graduate from Miami Senior High School in 2007 and went to work to support himself and help his family, while also intermittently attending classes at Miami-Dade College. As his PSR reflects, he has always been a hard worker working one or two jobs to make ends meet. *See* PSR ¶¶109-115. Most recently, Mr. Martinez has been working full-time by day in a cargo warehouse by the airport and part-time at night as a doorman at a strip club in South Miami. His boss at BT's Gentlemen's Club says Mr. Martinez is a man of "great character" and is willing to keep him on as an employee. PSR

¶111.   Mr. Martinez earns a modest living and shares an efficiency apartment with a roommate.

Mr. Martinez recently became a father and his little boy is the sunshine of his life. Although he does not live with the baby's mother, Mr. Martinez sees his son every day and helps provide for his well-being. PSR ¶99. It deeply saddens Mr. Martinez that he may be away from his son for some time due to his involvement in this offense. He never wished his son to go through what he did growing up without a father.  Mr. Martinez is hopeful that he and Alexandria Pinero, the child's mother, will eventually patch up their differences and raise the boy together. They maintain an "amicable" relationship.

Until the birth of his young son, the pride and joy of Mr. Martinez's life has been professional wrestling. He fell in love with professional wrestling as a boy watching it on television with his mother. He loved the theatrics and physicality of the sport. It provided a glamorous escape from his drab everyday life. Eventually, he began wrestling himself and actually became very good at it. Indeed, Mr. Martinez has managed to make a small part-time career out of the sport, as this Court may recall from Mr. Martinez's several requests to travel outside the jurisdiction to attend various televised professional wrestling events. A recent promotional material is attached as Exhibit B (Mr. Martinez is on the right).

Unfortunately, however, Mr. Martinez's enthrallment with sport has played a role in his current predicament.  All the body-slamming and chair-smashing would take a toll on his body. The sport also required that Mr. Martinez bulk up and look massive, especially since (at 5 feet 4 inches tall) he was not otherwise as large as the men he faced in the ring.  All of this greatly contributed to Mr. Martinez's well-documented heavy reliance on marijuana and

steroids over the years. *See* PSR ¶105.

Thus, Mr. Martinez's involvement in this offense was inextricably tied to his dependence on pain-numbing and muscle-building drugs. Since his arrest, however, Mr. Martinez has stopped using marijuana and performance-enhancing drugs and is committed to staying clean. His determined effort to address his substance abuse problem is another measure of his sincere determination to continue to improve himself and be there for his growing family.  It provides another mitigating factor not fully taken into by the guidelines that should give the Court further assurance that he is extremely unlikely to ever get in trouble with the law again.

B.

Finally, Mr. Martinez's guidelines also do not fully reflect his genuine regret for having participated in this offense nor the concrete steps he has taken to face the consequences of his actions.  For example, Mr. Martinez was quick to plead guilty and has offered to cooperate with the government.  Indeed, upon his arrest, Mr. Martinez provided a lengthy tape-recorded statement to the authorities in which he laid out everything he knew about this operation and his involvement in it. Admissions he made respecting his role in the marijuana aspect of this offense provided the government with information used to increase his sentence now.  Thus, Mr. Martinez may be deemed to have shown a super-acceptance of responsibility, which his applicable guidelines do not adequately reflect.

Furthermore, although Mr. Martinez is willing to continue to cooperate with the government, it does not appear that the government deems his cooperation to amount to "substantial assistance," thus warranting a motion for a sentencing reduction. Nevertheless,

the Court may take Mr. Martinez's cooperation into account at sentencing, knowing that Mr. Martinez has chosen an entirely new path in life.

WHEREFORE Mr. Martinez requests that the Court sustain his objection to the PSR and impose a sentence that is "sufficient, but not greater than necessary" to comply with the purposes of the statute. A sentence of fewer than 30 months in prison would seem to be appropriate.

Respectfully submitted,

JOAQUIN MENDEZ, P.A.
By:
 s/ Joaquin Mendez_____
Joaquin Mendez,  Esq.
Florida Bar No. 0814652
251 Valencia Ave. No. 141447
Coral Gables, Florida 33114
Telephone (305) 375-0886
jm@jmendezlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of December, 2020, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.

s/ Joaquin Mendez_____
Joaquin Mendez,  Esq.

# **EXHIBIT A**



# EXHIBIT B

